IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CARL EDWARD LAMB, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. EP-16-CV-292-KC-ATB |
| | § | |
| CPI CAMACHO, | § | |
| CPI F. ESTRADA, | § | |
| OFFICER WILKS, | § | |
| OFFICER A. SALAZAR, and | § | |
| OFFICER D. ACUNA, | § | |
|     Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered Plaintiff's Motion for Summary Judgment (ECF. No. 127, 137, 138) filed on May 15, 2017, by Plaintiff Carl Edward Lamb, and Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF. No. 146) filed on June 16, 2017, by Defendants Camacho, Estrada, Salazar, Acuna, and Wilks.[1] The current motion was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** as set forth herein.

### I. PROCEDURAL BACKGROUND

Plaintiff Carl Edward Lamb, proceeding *pro se* and *in forma pauperis*, was previously detained at the El Paso County Detention Facility ("Detention Facility"). (ECF. Nos. 1-3). The allegations in Plaintiff's Complaint arise from his pretrial detention at the Detention Facility and his incidents of self-mutilation by way of "cutting." (*See* Compl. ¶ 1 *et seq.*).

---

[1] As noted below, Plaintiff has twice supplemented his Motion for Summary Judgment with additional arguments and evidence. (ECF. Nos. 137, 138). As such, the Court will construe the entirety of these filings as Plaintiff's Motion for Summary Judgment.

No. EP-16-CV-292-KC-ATB            1

On July 25, 2016, Plaintiff sought a preliminary injunction, which the Court denied. (ECF. Nos. 5, 46, 54). Thereafter, on August 26, 2016, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF. No. 36). On December 13, 2016, the Court issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted in part and denied in part, which the District Court adopted. (ECF. Nos. 56, 85). Consequently, following the District Court's Order, only the following claims remain:

- **Corporal Camacho -** failure to protect from self-inflicted harm and deliberate indifference to serious medical needs regarding the April 16, 2016 incident;

- **Corporal Estrada -** failure to protect from self-inflicted harm, deliberate indifference to serious medical needs, and retaliation regarding the April 4 and May 25, 2016 incidents;

- **Officer Wilks -** deliberate indifference to serious medical needs regarding the May 25, 2016 incident;

- **Officer Salazar -** deliberate indifference to serious medical needs regarding the May 25, 2016 incident; and

- **Officer Acuna -** deliberate indifference to serious medical needs regarding the May 25, 2016 incident.

(ECF. Nos. 56, p. 37-39; 85, p. 13).

Throughout the subsequent months, Plaintiff filed numerous notices, settlement offers, motions, subpoenas, and requests for injunctions, which the Court will not recount in detail here. (*See* ECF Nos. 29, 37, 62, 66, 87, 90, 91, 109, 116, 118).

Subsequently, on May 9, 2017, Plaintiff sought to compel the production of an audio CD involving the intercom calls between Plaintiff and the guard station on May 25, 2016, which the Court granted. (ECF. Nos. 124, 130). On June 2, 2017, Plaintiff filed a motion seeking a Court Order requiring the jail to mail the audio CD in question to the Court in support of his Motion for

Summary Judgment. (ECF. No. 136). Defendants responded by providing the CD in question to the Court and filing various objections. (ECF. No. 139). Accordingly, the Court found that Plaintiff's Motion was moot and took the objections under advisement, which will now be addressed below. (ECF. Nos. 140, 149).

On May 15, 2017, Plaintiff moved for summary judgment on his remaining claims. (ECF. No. 127). Thereafter, Plaintiff twice supplemented his motion for summary judgment with additional evidence and arguments. (ECF. Nos. 137, 138). Following the granting of a continuance, Defendants responded in opposition to Plaintiff's Motion for Summary Judgment. (ECF. No. 146). Additionally, on August 10, 2017, Defendants filed a Cross Motion for Summary Judgment. (ECF. No. 166). However, in the interest of judicial economy, the Court will address Defendants' Cross Motion for Summary Judgment in a separate Report and Recommendation. Accordingly, Plaintiff's Motion for Summary Judgment is now ripe for the Court to adjudicate.

## II. FACTUAL BACKGROUND[2]

Because Plaintiff's filings contain numerous irrelevant and voluminous materials, the Court only recounts the facts relevant to the remaining Defendants and Plaintiff's claims during the applicable time periods.

### a. Undisputed Facts

Plaintiff intentionally cut himself on multiple occasions and has a history of mutilating himself. (ECF. No. 146-1, Defendants' Response to Plaintiff[']s Proposed Undisputed Facts ("UF"), ¶ 1, 7). Plaintiff "sometimes" wore a red wristband to indicate he was on suicide

---

[2] When recounting the background information, the Court has accepted all of the nonmoving party's properly supported fact assertions as true and has given the nonmoving party the benefit of all reasonable inferences that can be drawn from the fact record before it. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (holding that all justifiable inferences are to be drawn in the nonmovant's favor).

observation, and although Defendants were generally aware that Plaintiff was on suicide observation, the exact dates remain in dispute. (UF ¶ 1). Moreover, on various occasions, medical personnel have ordered that Plaintiff was not to receive "anything sharp." (*Id.*).

  b.  **Plaintiff's Account**

On April 4, 2016, Plaintiff was on suicide observation, which includes video surveillance by a centralized guard station. (ECF. No. 127, p. 31).[3] While on suicide observation, Plaintiff wore a red wristband, had a yellow observation sheet placed outside of his cell block to indicate that he was a suicide risk, and was not allowed access to sharp objects or razors without supervision. (*Id.*). Nonetheless, on April 4, 2016, despite knowing that Plaintiff was on suicide observation, Defendant Estrada provided Plaintiff with unsupervised access to a razor.[4] (*Id.*). When Defendant Estrada returned to recover the razor, Plaintiff stated that he was not finished cutting his hair. (*Id.*). Thereafter, Defendant Estrada removed the handle and allowed Plaintiff to keep the razorblade, stating "[that way] it would not look like an officer gave [Plaintiff] the razor." (*Id.*). After a few days, Plaintiff cut himself with the razor given to him by Defendant Estrada. (*Id.* at 32).

Soon after, on April 16, 2016, while on the same suicide observation protocol, Plaintiff alleges that Defendant Camacho provided him with unsupervised access to a razor, despite his knowledge that Plaintiff was on suicide observation. (*Id.* at 33). While providing Plaintiff with the razor, Defendant Camacho allegedly stated, "I am willing to give you a razor but if you cut [yourself] don't do that [expletive] on my shift." (*Id.*). Subsequently, at approximately 6:55 p.m.

---

[3]  Because Plaintiff has filed numerous affidavits, the Court references the internal CM/ECF pagination in the interests of clarity.

[4]  Plaintiff also references the date of March 4, 2016. (ECF. No. 127, p. 31). The Court notes, however, that this appears to by a typographic error.

during a shift change, Plaintiff cut himself with the razor provided by Defendant Camacho. (*Id*. at 34).

Finally, on May 25, 2016, Plaintiff cut himself multiple times early in the day.[5] (*Id*. at 35; UF ¶ 7). During a shift change at approximately 7:00 p.m., Plaintiff showed Defendant Estrada his wounds and requested medical care. (ECF. No. 127, p. 35; Compl. ¶¶ 37-38). However, because Plaintiff had reported Defendant Estrada to his supervisors for providing Plaintiff with unsupervised razor access, Plaintiff alleges, in essence, that the following interaction took place:

| | |
|---|---|
| Defendant Estrada: | what are you going to do tell the [Sergeant] I'm giving you razors again[?] [D]on[']t be [sic] giving my name up . . . ." |
| Plaintiff: | [Responds in the affirmative]. |
| Defendant Estrada: | Don't be giving up my name. You need to go to the clinic right?" |
| Plaintiff: | [Responds in the affirmative]. |
| Defendant Estrada: | We will see about that, you don't have [expletive] coming. |

(ECF. No. 127, p. 35; *see* Compl. ¶ 38). Thereafter, Plaintiff dug further into his cuts with a razor, smeared blood over his cell windows, and hung a shower curtain to attempt suicide. (ECF. No. 127, p. 35-36, 38; *see* Compl. ¶ 39). When Defendants Salazar and Acuna entered Plaintiff's cell to retrieve the curtain, Plaintiff showed them his wounds but they took no action. (ECF. No. 127, p. 36). Similarly, Defendant Wilks, despite seeing Plaintiff through the observation camera and being informed of Plaintiff's injuries on the intercom, also took no action. (*Id*. at 35-36). Thereafter, Plaintiff alleges that Defendants Estrada, Salazar, Acuna, and Wilks allowed him to bleed in his cell for ten hours until the morning of May 26, 2016, when he was taken to the

---

[5] Although Defendants agree that Plaintiff had cut himself early on May 25, 2016, Defendants also contend that Plaintiff was taken to the clinic immediately following these incidents. (UF ¶ 7).

clinic. (*Id*. at 36).

    c.    **Defendants' Account**

Defendant Estrada denies that he provided Plaintiff with a razor on April 4, 2016. (UF ¶ 3). Although Defendant Estrada admits that he provided Plaintiff with razors twice in April 2016, Plaintiff was under close observation on both occasions and Defendant Estrada returned soon thereafter to recover the razors. (ECF. No. 146-8, Estrada Affidavit "Estrada Aff." ¶¶ 8-9). Defendant Estrada additionally states that he never removed a handle from a razor that he provided to Plaintiff or stated that "[this way] it wouldn't look like an officer gave him the razor." (UF ¶ 3; Estrada Aff. ¶ 8).

Regarding the April 16, 2016 incident, Defendant Camacho denies that he provided Plaintiff with unsupervised razor access while he was on suicide observation. (ECF. No. 146-14, Camacho Affidavit "Camacho Aff." ¶ 15). Defendant Camacho further contends that he never stated "I'm willing to give you a razor but if you cut yourself[,] don't do that [expletive] on my watch." (*Id*.).

Lastly, regarding the May 25, 2016 incident, Defendant Estrada alleges that, although he did not observe Plaintiff's injuries, he made immediate arrangements to take Plaintiff to the clinic and Plaintiff was transported within five minutes. (Estrada Aff. ¶ 11). Similarly, Defendant Salazar observed Plaintiff's arms, which were "red" rather than bleeding, and witnessed an officer take him to the clinic within five minutes. (ECF. No. 146-20, Salazar Affidavit "Salazar Aff." ¶ 11). Defendant Wilks likewise notes that Plaintiff received his requested medical attention at 7:35 p.m. (ECF. No. 146-21, Wilks Affidavit "Wilks Aff." ¶ 8). Finally, although Defendant Acuna has no recollection of Plaintiff's self-mutilation on that day, at no time did Defendant Acuna observe Plaintiff smear blood on his window. (ECF. No. 146-

13, Acuna Affidavit "Acuna Aff." ¶¶ 7, 11-12). None of the Defendants indicate any incidents after 7:35 p.m. on May 25, 2016.

## III.  EVIDENTIARY OBJECTIONS

Defendants object to a CD on file with the Court regarding intercom calls between Plaintiff and Defendants on May 25, 2016. (ECF. No. 139). Specifically, Defendants object to Plaintiff's representations regarding the contents of the CD, the authentication regarding the various voices on the CD, and the probative value of the CD. (*Id.*). Plaintiff responds with a sworn affidavit purporting to authenticate the contents of the CD. (ECF. No. 148-1). Specifically, Plaintiff makes the following representations regarding the contents of the CD: [6]

- 05-43-04 – Plaintiff asks Defendant Wilks to call mental health, and Defendant Wilks responds "let me see if I can get a hold of them."

- 05-54-52 – Plaintiff tells an unidentified Defendant "you see all of this blood, take me to medical."

- 6-52-19 – Plaintiff states that he needs to go to the medical clinic, and Defendant Wilks, after a brief clarification, states "hold on let me see if I can get a hold of them.

- 6-53-45 – Plaintiff tells Defendants Salazar and Acuna that "I need to go to the clinic," although Plaintiff is not heard referencing his alleged bleeding. Moreover, Defendants Salazar and Acuna engage in an unintelligible conversation regarding the shower curtain.

- 7-30-39 – Plaintiff states to Defendant Wilks "Sir, what's going on with medical." Thereafter, Defendant Wilks responds that there were currently women at the clinic and that Plaintiff would have to wait. Plaintiff responds by accusing Defendant Wilks of lying, and Defendant Wilks responds that he is telling the truth.

- 9-20-06 – Plaintiff asks Defendant Acuna "what's going on with the clinic?" Defendant Acuna then inquires why Plaintiff needed access to the clinic. Plaintiff states that it was "for [his] arm" and Defendant Acuna replies "alright let me call the clinic again."

---
[6]  The Court notes that the file numbers contained in the CD do not appear to correspond to a time code or exact date.

- 10-31-02 – Plaintiff asks Defendant Acuna "what's going on with the clinic." Defendant Acuna responds "they're busy right now [], they're going to call me back."

(*See* ECF. Nos. 139; 142; 148-1, p. 2-3).

Even assuming *arguendo* that Plaintiff has authenticated the CD, the Court agrees with Defendants that the CD is of limited probative value. As noted below, the dispositive question is whether Defendants provided Plaintiff with unsupervised access to razors and whether Defendants delayed in taking Plaintiff to the clinic on May 25, 2016, despite knowledge of his "open lacerations." The above-noted facts only indicate that Plaintiff requested access to the clinic at unknown times, not that Defendants ignored Plaintiff's requests for medical care or provided Plaintiff with unsupervised access to razors. Moreover, because Defendants dispute the facts underlying Plaintiff's claims, the Court must accept Defendants' version of the facts for the purposes of ruling on Plaintiff's Motion for Summary Judgment. *See Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); Fed. R. Civ. P. 56. Accordingly, this evidence is immaterial for the purposes of Plaintiff's Motion for Summary Judgment.

As such, Defendants' objections are sustained with respect to the probative value and relevance of the CD for the purposes of this Report and Recommendation.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it might affect the outcome of the suit." *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014) (citation and quotation marks omitted). A "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, "'the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.,* 477 U.S. at 324). The Court must draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations. *Id.* (quoting *Turner v. Baylor Richardson Med Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007)).

"When [a] plaintiff moves for summary judgment, it must affirmatively demonstrate that there is no genuine issue of material fact as to each element of its causes of action." *Sanders v. Unum Life Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 72062, at *8 (W.D. Tex. 2007) (citing *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1195 (5th Cir. 1986)).

V.  ANALYSIS

In Plaintiff's Motion for Summary Judgment, Plaintiff essentially recounts his version of the facts and claims that he is entitled to summary judgment as a result. (ECF. No. 127, p. 12-23). In various portions of his filings, Plaintiff suggests that "everything I have alleged in my complaint[,] . . . [D]efendants have admitted to . . . ." (*See id*. at 17, 38). Moreover, Plaintiff accuses Defendants of perjury, falsifying daily activity reports, and falsifying medical records. (*See e.g.*, ECF. Nos. 127, p. 38, 115; 137, p. 3, 6; 137-2, p. 34). Accordingly, Plaintiff contends that he has proven by "clear and convincing evidence" that he is entitled to summary judgment as a matter of law. (*See* ECF. No. 137-2, p. 18, 20).

Defendants respond that disputed facts remain as Defendants Estrada and Camacho contend that they never provided Plaintiff with unsupervised access to razors. (ECF. No. 146, p. 14-18). Regarding the May 25, 2016 incident, Defendants argue that Defendants Estrada, Wilks, Salazar, and Acuna provided Plaintiff with medical care within five minutes of learning of Plaintiff's alleged injuries – testimony which is supported by records from the jail clinic. (*Id*. at 20-22). Moreover, Defendants contend that material facts remain with respect to Plaintiff's retaliation claims against Defendant Estrada. (*Id*. at 24). Specifically, Defendants argue that, as Plaintiff received immediate medical attention, no retaliatory adverse act or causation has been demonstrated. (*Id*.). Lastly, Defendants contend that Plaintiff has not met his burden of overcoming their defense of qualified immunity. (*Id*. at 24-25).

### a. Legal Standards

To prove deliberate indifference, a prisoner must establish two elements: (1) that he or she was deprived of a medical need that is "objectively, 'sufficiently serious,'" and (2) that the defendant had a "sufficiently culpable state of mind" (i.e. deliberate indifference to inmate health or safety). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted); *Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015) (citations omitted). To establish a "sufficiently culpable state of mind," a plaintiff must show that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm to occur." *Thompson v. Upshur Cty.*, 245 F.3d 447, 458-59 (5th Cir. 2001) (citation omitted).

Similarly, although there is no "constitutionally significant distinction between failure-to-protect and medical care claims," to prove a failure-to-protect claim a plaintiff must establish that: (1) the defendant had subjective knowledge of a substantial risk of serious harm to a pretrial

detainee; and (2) the defendant nevertheless disregarded the risk of suicide by responding to it with deliberate indifference. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

Regarding retaliation, "[t]o state a valid claim for retaliation . . . , a prisoner must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam). The Plaintiff must also establish "that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Lastly, with regard to qualified immunity, qualified immunity involves a two-pronged inquiry: "whether (1) defendant's conduct violated a constitutional right and (2) that right was clearly established at the time of the misconduct – in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). At the summary judgment stage, "once a state official . . . asserts the defense, the burden shifts to the plaintiff to show that the defense is not available." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citing *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)). "The plaintiff therefore bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity." *Trent*, 776 F.3d at 376 (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

### b. Analysis

As noted in the Court's previous Report and Recommendation, Plaintiff's deliberate indifference and failure-to-protect claims resulting from the April 4 and 16, 2016 incidents hinge on whether Defendants Camacho and Estrada knowingly provided Plaintiff with unsupervised access to razors. (*See* ECF. No. 56, p. 22). Notwithstanding Plaintiff's conclusory contention that these Defendants "admitted" to wrongdoing, Defendants Camacho and Estrada flatly deny

these allegations. (Estrada Aff. ¶¶ 8-9; Camacho Aff. ¶ 15). Accordingly, genuine issues of material fact remain regarding whether Defendants Camacho and Estrada knowingly provided Plaintiff with unsupervised access to razors.

Similarly, Plaintiff's deliberate indifference claims stemming from the May 25, 2016 incident hinge on whether Defendants Estrada, Acuna, Salazar, and Wilks knowingly deprived Plaintiff of medical care for his alleged arm lacerations. (*See* ECF. No. 56, p. 23-24). Defendants Estrada, Salazar, and Wilks all contend that Plaintiff was taken to the clinic within five minutes (at approximately 7:35 p.m.) of Plaintiff requesting access to medical care. (Estrada Aff. ¶ 11; Salazar Aff. ¶ 11; Wilks Aff. ¶ 8). None of the Defendants indicate any incidents after 7:35 p.m. on May 25, 2016.

Consistent with these affidavits, clinic notes entered at 9:54 p.m. on May 25, 2016, confirm that Plaintiff received reapplication of his surgical tape strips, which notably Plaintiff claimed "didn't hold due to bleeding." (ECF. No. 146-11, p. 46). Plaintiff was also seen by Emergence Health Network ("EHN") professionals at 11:46 p.m. (ECF. No. 146-10, p. 37). During this meeting, Plaintiff failed to request medical care and no medical professional noted his "open lacerations." (ECF. No. 146-10, p. 37). Similarly, Plaintiff was seen by EHN workers for mental health evaluations on May 26, 2016, at 9:57 a.m., 3:25 p.m., and 11:39 p.m. and Plaintiff never requested medical care, nor did these medical professionals observe Plaintiff's alleged lacerations. (ECF. No. 146-10, p. 32-36). This summary judgment evidence suggests that Plaintiff was not denied medical care on May 25, 2016, and therefore, summary judgment in Plaintiff's favor is inappropriate.

Lastly, Plaintiff's retaliation claim against Defendant Estrada hinges on whether Defendant Estrada denied him medical care on May 25, 2016, due to Plaintiff's reporting of

Defendant Estrada. (*See* ECF. No. 56, p. 18-19). As noted above, the summary judgment evidence suggests that Plaintiff was not denied medical care on May 25, 2016, and therefore, that Defendant Estrada did not engage in a retaliatory adverse act or cause Plaintiff's alleged harms. Accordingly, Plaintiff has not satisfied his burden to demonstrate that no genuine issue of material fact exists regarding his retaliation claim.

In sum, Defendants have produced competent summary judgment evidence that: (1) Defendants Estrada and Camacho never provided Plaintiff with unsupervised access to razors; (2) Defendants Estrada, Acuna, Salazar, and Wilks immediately secured Plaintiff access to medical care on May 25, 2016; and (3) Defendant Estrada never retaliated against Plaintiff. Accordingly, Plaintiff has not satisfied his burden to establish that no genuine issues of material fact exist.[7] Similarly, the Court finds that, because Plaintiff has not carried his burden with respect to his claims on summary judgment, he has also not met his burden of establishing the inapplicability of qualified immunity. As such, the Court recommends that Plaintiff's Motion for Summary Judgment be denied.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF. Nos. 127, 137, 138) be **DENIED**.

**SIGNED** and **ENTERED** this 21st day of August, 2017.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] The Court expresses no opinion on the merits of Defendants' Cross Motion for Summary Judgment.

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**